**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANDREA CANO -MARTINEZ,** | : | **Civil No. 3:14-CV-1090** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| **Commissioner of Social Security** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    INTRODUCTION

This is an action brought under 42 U.S.C. 405(g), seeking judicial review of

the final decision of the Commissioner of Social Security's final decision denying

Plaintiff Andrea Martinez-Cano's applications for disability insurance benefits and

supplemental security income under Titles II and XVI of the Social Security Act.

This matter has been referred to the undersigned United States Magistrate Judge on

consent of the parties, pursuant to the provisions of 28 U.S.C. §636(c) and Rule 73

of the Federal Rules of Civil Procedure.  (Docs. 14, 15.)

In its current form, this case involves a narrow and specific claim since it is

undisputed that, following this initial unsuccessful application, Cano-Martinez

subsequently was awarded disability benefits in April of 2014, with those benefits

commencing from September 2012. (Doc. 10, p.2.) Therefore, the current entitlement of the Plaintiff to these benefits is not an issue in this litigation. Instead, Cano-Martinez alleges in this appeal that she is entitled to an additional, closed period of benefits for the period encompassed by this initial adverse ALJ ruling. That period of disputed disability extends from August 2009 through September 2012.

During this closed period the Plaintiff alleged that she suffered from a combination of physical and mental impairments including major depressive disorder, intermittent explosive disorder, anxiety disorder, panic attacks, vertigo, asthma, migraines, and fibromyalgia. The Plaintiff advanced these disability claims on a factual record which was equivocal and contained substantial evidence undermining her claim of disability during this closed period. For example, the great preponderance of medical expert opinion relating to this closed period of claimed disability found that Cano-Martinez retained the residual capacity to perform some work despite her physical and emotional challenges. Similarly, the record of these proceedings suggested that Cano-Martinez had actually worked during this fixed period when she claimed that she was disabled, since medical records reported Plaintiff was admitted to a psychiatric care facility on October 10, 2011, two years after the claimed onset of her disability, because she had a relapse of panic attacks and *quit her job*. (Admin Tr. 771)(emphasis added.). Further, the medical records

relating to this closed period of disability cast doubt upon Cano-Martinez's credibility since Plaintiff's own treating psychiatrist noted during this time that the Plaintiff appeared to be "faking" injuries to obtain pills from hospital emergency departments. (Admin Tr. 254).

Given the equivocal factual record relating to Cano-Martinez's claims of disability during this closed period, and recognizing that substantial evidence existed which supported the ALJ's decision denying benefits during this fixed and finite period, for the reasons set forth below the decision of the ALJ in this case will be affirmed.

## II.    BACKGROUND AND PROCEDURAL HISTORY

### A.    CANO-MARTINEZ'S APPLICATION AND CLAIMS OF DISABILITY

This particular case commenced on January 19, 2011, and January 20, 2011, when Cano-Martinez filed applications for disability benefits under Titles II and XVI of the Social Security Act.  In both applications, the Plaintiff alleged that the following conditions limited her ability to work:  major depressive disorder; intermittent explosive disorder; vertigo; asthma; fibromyalgia; anxiety; panic attacks; migraines; and intermittent explosive disorder.  (Admin Tr. 173).  Cano-Martinez further alleged that the combination of these impairments resulted in a complete inability to engage in her past relevant work, or any other work, beginning on August

30, 2009. Cano-Martinez took this position even though medical records subsequently indicated that on October 10, 2011, two years after the claimed onset of her disability, she had quit a job. (Admin Tr. 771).

In connection with this application Cano-Martinez reported that she lived in an apartment with her mother, school age daughter, and her two brothers. (Admin Tr. 64-65). Plaintiff attained her high school degree, was 30 years old on the date the ALJ issued his decision and was, therefore, a younger work at the time of this disability claim. At the time she filed her applications for benefits Cano-Martinez was attending college, but stopped taking classes after three semesters due to the combination of her physical ailments and depression. (Admin Tr. 65-66, 190). Cano-Martinez also testified that, despite her impairments she was able to maintain her own personal hygiene, and care for her daughter and dog. (Admin Tr. 72, 191). Plaintiff testified that she attempted to do her share of the household chores, but took frequent breaks because she could not stand for long periods of time. Id. Plaintiff also testified that she is able to drive short distances and drove her daughter to and from school, but reported that she did not drive herself to her administrative hearing. (Admin Tr. 73). According to Cano-Martinez, she socialized with three close friends, and visited them in their homes to watch movies. (Admin Tr. 81-82).

With respect to her physical limitations, Plaintiff reported that she could sit for ten to fifteen minutes at one time and stand for ten to fifteen minutes at one time, but then must lie down for ten to fifteen minutes. (Admin Tr. 65-66, 70, 210). These postural changes helped reduce the pain in Plaintiff's hips and lower back during the day, but her pain made it very difficult to sleep; she averages approximately four hours of sleep per night. Id. The record reflected that Plaintiff made similar postural adjustments throughout her administrative hearing. (See Admin Tr. 67) asking to stand). Plaintiff testified that she did not attend the great majority of her daughter's soccer games due to her postural restrictions. (Admin Tr. 73). Plaintiff reported that she has constant pain in her neck, left shoulder, back, and hips. (Admin Tr. 68). She was prescribed Tramadol and Flexeril, which "takes the edge off" this pain. Id. Plaintiff noted that she had one migraine, but that they had not recurred. (Admin Tr. 68). Plaintiff testified that she could lift up to five pounds. (Admin Tr. 71).

Cano-Martinez also reported that she has a history of depression, anger problems, dizziness and vertigo, asthma, widespread pain, headaches, panic attacks, and anxiety, stating that she experienced episodes of depression approximately once per month. Her doctors had been responding to these episodes by adjusting her medications. (Admin Tr. 74). She also reported that one such medication adjustment resulted in an episode of inpatient hospitalization because Zoloft had the side-effect

of making her cut herself.  (Id.)  She also reported episodes of cutting while taking

Paxil, before she was prescribed Abilify.  (Id.)  Plaintiff reported that she experiences

three panic attacks per month, but felt anxious approximately two times per week.

(Admin Tr. 79-80).  She reported that her anger issues have interfered with her work

in the past, and that she had been fired or quit jobs because she got into arguments.

(Admin Tr. 196).

## B.    THE CONTRADICTORY AND EQUIVOCAL MEDICAL EVIDENCE

Juxtaposed against Cano-Martinez's self-reported limitations was a body of

medical evidence which presented a different, and often contradictory picture of the

plaintiff's physical health and emotional well-being.  For example, beginning in

December 2009, Plaintiff treated with psychiatrist Ilan Levinson.  She was examined

by Dr. Levinson monthly throughout the relevant period.   During his initial

examination Dr. Levinson noted that Plaintiff had a Global Assessment of

Functioning score of 40.  (Admin Tr. 264).  His subsequent records, however, did not

contain any additional GAF assessments, and the doctor repeatedly found that

Plaintiff was polite, made good eye contact, had no psychomotor agitation, was

cooperative, displayed good self-care, spoke normally, had a goal-directed thought

process, and had no significant cognitive impairments, delusions, homicidal thoughts,

or hallucinations, findings which were largely inconsistent with complete disability. (Admin. Tr. 247-61, 762-86).

Cano-Martinez's medical records during this closed period of claimed disability, in large part, consisted of records relating to the treatment of various ailments in the Pocono Medical Center Emergency Room. In fact, Cano-Martinez presented to the Emergency Department in excess of 30 times over a period of two years – from 2010 through the end of 2011, and was treated for a variety of physical and mental ailments.

These medical records were illuminating in several regards, and oftentimes seemed to undercut both the Plaintiff's credibility and her claims of disability. For example, these records showed that Cano-Martinez often self-reported a level of physical activity that was inconsistent with her claims of complete disability. For example, among her physical ailments she presented with a number of musculoskeletal complaints including: a strained shoulder on two separate occasions from carrying a refrigerator, (Admin Tr. 325, 708-10); knee strain from chasing her dog, (Admin Tr. 332); back pain as a result of lifting her dog (a rotweiler/german shepard mix) (Admin Tr. 382-83); and a back injury from tripping over a bicycle (Admin Tr. 398). She also presented with additional complaints of bilateral hip pain, lower extremity pain, back pain, and joint pain in her hand that was not precipitated

by physical injury. (Admin Tr. 377, 467-70, 482-93, 510-11). Further, in a number of instances these records revealed misleading, opportunistic drug seeking behavior by Cano-Martinez. During several of these emergency room visits Plaintiff reported that she had run out of her prescribed pain medications and sought to have her prescriptions refilled. In fact, Cano-Martinez's treating psychiatrist noted that the Plaintiff appeared to be "faking" injuries to obtain pills from the emergency department. (Admin Tr. 254).

Cano-Martinez also presented to the emergency room on several occasions as a result of her mental impairments due to anger outbursts relating to strife in her living situation. Plaintiff testified that she was admitted for inpatient psychiatric treatment at New Perspectives on three occasions: November 2011, March 2012, and May of 2012. Treatment notes from Dr. Levinson dated October 24, 2011, reflect that Plaintiff was admitted to New Perspectives on October 10, 2011, because she had a relapse of her severe panic attacks, started cutting herself, and experienced passive suicidal ideation. (Admin Tr. 771). Plaintiff was admitted to New Perspectives for inpatient treatment a second time for three days in May 2012 because she experienced increased depression, isolation, anger, and reported thoughts of harming one of her housemates, a friend's mother. (Admin Tr. 565). On June 4, 2012, Dr. Levinson noted that Plaintiff had been admitted to New Perspectives a third time from May 10,

2012, through May 20, 2012, for cutting and depression. (Admin Tr. 763). However, even these mental health medical records, which documented some impairments, cast some doubt upon Cano-Martinez's claims that she was completely disabled due to her mental health conditions since these records also indicated that on October 10, 2011, Cano-Martinez had quit her job, thus reporting that Cano-Martinez was employed at a time when she had claimed she was totally disabled. (Admin Tr. 771.)

## C. THE MEDICAL OPINION EVIDENCE REFUTING CANO-MARTINEZ'S CLAIM OF DISABILITY

Further, the record before the ALJ, and this Court, contains medical opinions by nontreating, and nonexamining sources, all of whom consistently concluded that Cano-Martinez retained the residual capacity to perform some light work. Moreover, notably, Cano-Martinez provided no countervailing medical opinion evidence asserting that her aliments were disabling during this closed period.

Thus, on February 4, 2011, Dr. Thomas Fink, a nonexamining state agency psychologist, assessed the severity and limiting effects of Plaintiff's alleged mental impairments. Dr. Fink opined that Plaintiff had the medically determinable severe impairment of fibromyalgia, and nonsevere impairments of obesity, asthma, and anxiety disorder. (Admin Tr. 99). He opined that Plaintiff's mental impairments resulted in mild restriction of activities of daily living, mild difficulties maintaining

social functioning, mild difficulties maintaining concentration, persistence, or pace, and no repeated episodes of decompensation of extended duration. (Admin Tr. 100). Dr. Fink explained that, he found Plaintiff's mental disability allegations to be only partially credible because:

> Although the claimant has a recent history of Mood Disorder NOS, Panic Disorder, GAD [generalized anxiety disorder] and Intermittent Explosive Disorder, she has not been psychiatrically hospitalized and she has responded well to outpatient psychiatric services. She had an incident several months ago related to a significant mental status change that required an ER visit, but this change appeared to be the result of medication problems. It quickly resolved. At 12/6/10 at psychiatric follow, she reported she was "doing good." ALJ skills are intact. She can cook, clean, drive a car and carry-out self-care and childcare functions on a daily basis. Mood is euthymic. She remains AAOX3, nonpsychotic and cognitively intact. Socially she is polite, cooperative and able to interact and communicate well.

(Admin Tr. 100).

On April 19, 2011, Dr. Leo P. Potera, a state agency medical consultant, assessed Plaintiff's physical residual functional capacity ("RFC"). (Admin Tr. 101-03). Dr. Potera opined that Plaintiff retained the physical capacity to: occasionally lift or carry up to twenty pounds, frequently lift or carry up to ten pounds, and could push or pull on an unlimited basis within these restrictions; stand or walk for a total of six hours per eight-hour workday; sit for a total of six hour per eight-hour workday; frequently climb ramps or stairs, balance, stoop, kneel, or crouch;

occasionally climb ladders, ropes or scaffolds, or crawl. Dr. Potera also recommended that Plaintiff avoid concentrated exposure to humidity, fumes, odors dusts, gasses, poor ventilation, and hazards (moving machinery/heights).

On March 25, 2011, nontreating medical source Dr. Sethuraman Muthiah examined Plaintiff at the request of the Social Security Administration. (Admin Tr. 551-58). Plaintiff reported the chief complaints of neck pain, left shoulder pain, hip pain, lower back pain, bilateral lower extremity pain, and bilateral ankle pain. Plaintiff also reported intermittent swelling in her joints and frequent headaches. On examination Dr. Muthiah observed that Plaintiff was obese, and had multiple tender points in her neck, back, and lower extremities. He also noted that Plaintiff's reflexes and muscle tone were normal, and that there was no evidence of asthma. Range of motion testing revealed a slightly decreased range of motion in Plaintiff's shoulders, hips, cervical spine, lumbar spine, and ankle. Dr. Muthiah reported the impression of fibromyalgia, major depression, and intermittent explosive disorder. He opined that, despite these impairments, Plaintiff retained the physical capacity to: frequently lift twenty-five pounds and frequently carry twenty pounds; stand or walk up to two hours in an eight-hour workday; sit without restriction; frequently stoop, crouch, balance, and climb; and occasionally bend or kneel. He also opined that Plaintiff should avoid exposure to temperature extremes.

## D.  PROCEEDINGS BEFORE THE ALJ

Cano-Martinez's claims were initially denied on April 19, 2011. On June 16, the Plaintiff filed a written request for an administrative hearing. On May 30, 2012, Plaintiff, assisted by counsel, appeared and testified at an administrative hearing before ALJ Edward L. Brady in Wilkes-Barre, Pennsylvania. Impartial Vocational Expert Carmine Abraham also appeared and testified.

Following this hearing, the ALJ denied Plaintiff's claims in a 17-page written decision dated September 14, 2012. (Admin. Tr. 19-36.) In his decision denying Plaintiff's applications for benefits, the ALJ determined that Plaintiff met the insured status requirements of Title II of the Act through June 30, 2014, then proceeded through each step of the five-step sequential evaluation process. (Admin Tr. 24). At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity at any point between her alleged onset date and the date of the ALJ's decision. (Admin. Tr. 24). At step two the ALJ found that Plaintiff had the medically determinable severe impairments of fibromyalgia, asthma, obesity, depression, and generalized anxiety disorder. Id. At step three the ALJ found that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin Tr. 25-27).

Before proceeding to steps four and five, the ALJ assessed Plaintiff's RFC. In doing so, the ALJ was required to consider all of Plaintiff's alleged symptoms and the extent to which these symptoms could reasonably be accepted as true when considered together with the record as a whole based on the requirements of 20 C.F.R. §§404.1529 and 416.929, and Social Security Rulings ("SSRs") 96-4p and 96-7p. The ALJ was also required to weigh the credibility of medical and other opinion evidence of record in accordance with the requirements of 20 C.F.R. §§404.1527 and 416.927, and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. After considering the record, the ALJ found that Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. §§404.1567(b) and 416.967(b), except that:

> The claimant is limited to a sit stand option every fifteen minutes. The claimant is limited to occasional bending, balancing, stooping, kneeling, crouching, crawling and climbing. The claimant should avoid extreme temperatures and humidity. The claimant is limited to simple routine repetitive work, generally described as unskilled work with no more than and[sic] SVP of 2. The claimant is limited to low stress work, described as no production rate requirements and occasional interaction with people.

(Admin Tr. 27).

At step four the ALJ considered whether, based on the above RFC, Plaintiff could engage in her past relevant work as a fast food worker and waitress. (Admin Tr. 34). The VE testified that, based on the RFC assessment articulated by the ALJ,

Plaintiff would be unable to engage in her past relevant work. Adopting the VE's testimony, the ALJ concluded that Plaintiff was unable to engage in her past relevant work.

At step five the ALJ considered whether, based on the above RFC considered together with the vocational factors of age, education, and work experience, Plaintiff could make the adjusted to "other work" which exists in the national economy. The VE testified that a hypothetical individual with the same vocational characteristics as Plaintiff and the above RFC, could engage in work as a packager, small products assembler, and inspector. The VE testified that, collectively, 19,070 of these jobs exist in the state economy, and 1,190 of these jobs exist in the national economy. Adopting the VE's testimony, the ALJ concluded that Plaintiff could adjust to "other work" that exists in "significant numbers" in the national economy.

Cano-Martinez requested that the Appeals Council review the ALJ's decision denying her claims. Together with her request Plaintiff submitted new evidence that was not before the ALJ, some of which apparently post-dated the ALJ's decision; the post-dated evidence was not included in the administrative record before this Court. (Admin Tr. 2, 788-837). Plaintiff has not raised the issue of whether remand is appropriate pursuant to sentence six of 42 U.S.C. §405(g). The Appeals Council denied Plaintiff's request for review on April 10, 2014.

## E.    THE INSTANT APPEAL

Thereafter, on June 5, 2014, Cano-Martinez initiated this action by filing a complaint.  In her Complaint, Plaintiff alleges that the ALJ's decision denying her claim for benefits is not in accordance with the law, or supported by substantial evidence.  (Doc. 1.)  In this regard, Cano-Martinez argues that the ALJ erred in:  (1) failing to find Cano-Martinez disabled due to her mental health conditions at Step 3 of this 5-step sequential analysis; (2) failing to expressly apply SSR-12-2p, a Social Security policy statement, to her claims of fibromyalgia; (3) assessing Cano-Martinez's credibility; and (4) in discounting some aspects of the Vocational Expert's testimony.  Cano-Martinez requested that this Court reverse the ALJ's decision denying her applications for benefits.  On August 12, 2014, the Commissioner filed her Answer, in which she contends that the ALJ's decision is in accordance with the law and is supported by substantial evidence.  (Doc. 8.)  Together with her Answer, the Commissioner filed a copy of the administrative record.  (Doc. 9.)  This matter has been fully briefed by the parties, and is now ripe for disposition.[1]  (Docs. 10, 11.)

---

[1] We note that Plaintiff's brief was not filed in accordance with Local Rule 83.40.4(a), which requires that she include a statement of facts including Plaintiff age, education and work experience, a summary of the physical and mental impairments alleged; and a brief outline of the pertinent factual, medical and/or vocational evidence of record.  Instead, under the heading "Factual Background," Plaintiff merely states that "[t]he facts of the case are properly contained in the Transcript submitted by the Defendant."  (Doc. 10 p. 2-3). Given the burden that rests with the

## III.   DISCUSSION

### A.   STANDARDS OF REVIEW–THE ROLES OF THE ADMINISTRATIVE LAW JUDGE AND THIS COURT

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators – the ALJ and this Court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits.

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a).

To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).

---

Plaintiff in this appeal, we commend to the Plaintiff the value of complying with these Local Rules in the future since this practice enables the Court to ascertain the factual basis for a claimant's legal arguments.

Additionally, to receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this framework, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520, 416.920(a). Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1545, 416.945. In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe

impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545, 416.945.

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. §423(d)(5); 42 U.S.C. §1382c(a)(3)(H)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §§404.1512, 416.912; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). When this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

Once a final decision is issued by the Commissioner, and that decision is appealed to this Court, our review of the Commissioner's final decision is limited to determining whether the findings of the final decision maker – the ALJ in this case – are supported by substantial evidence in the record as it was developed before that decision maker. See 42 U.S.C. §405(g)(sentence five); 42 U.S.C. §1383(c)(3)(incorporating 42 U.S.C. §405(g) by reference); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200(3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536(M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable

amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's

determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Among other things, Plaintiff has raised arguments relating to the sufficiency of the ALJ's evaluation of whether Plaintiff meets a listing at step three, and whether the ALJ improperly relied on the VE's response to an inaccurate hypothetical question. Like the scope of this Court's review, the ALJ's analysis of these issues is governed by certain clear, and clearly established standards, which we have articulated below.

### B.    GUIDELINES FOR THE ASSESSMENT OF WHETHER A CLAIMANT MEETS THE SEVERITY OF ONE OF THE IMPAIRMENTS LISTED IN 20 C.F.R. PART 404, SUBPART P, APPENDIX 1

At step three of the evaluation process, the ALJ must determine whether a claimant's alleged impairment is equivalent to a number of listed impairments that are acknowledged as so severe as to preclude substantial gainful activity. 20 C.F.R. §§404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. Part 404, Subpart P, Appendix 1; Burnett v. Comm'r of Soc. Sec, 220 F.3d 112, 119 (3d Cir. 2000). In making this determination, the ALJ is guided by several basic principles set forth by the social security regulations, and caselaw. First, if a claimant's impairment meets or equals

one of the listed impairments, the claimant is considered disabled per se, and is awarded benefits. 20 C.F.R. §§404.1520(d), 416.920(d); <u>Burnett</u>, 220 F.3d at 119. However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, Plaintiff bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 531 (1990); 20 C.F.R. §416.920(d). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. <u>Id.</u>

This particular case involves the Listings pertaining to mental impairments. The mental impairment listings, in large part, consist of a definitional statement describing the disorder(s) addressed by the listing (Paragraph A), and a set of impairment-related functional limitations that must be met to establish the requisite severity (Paragraph B). 20 C.F.R. Part 404, Subpart P, Appendix 1 §12.00A. Listings 12.02, 12.03, 12.04, and 12.06 also include a second set of impairment-related functional limitations (Paragraph C) that is only considered if the paragraph B criteria are not satisfied. <u>Id.</u> The Paragraph C criteria are not at issue in this case.

The Paragraph B criteria of Listings 12.02, 12.03, 12.04, 12.06, and 12.08 are identical, and require the ALJ to assess the degree of a claimant's limitation in four broad functional areas: activities of daily living; social functioning; maintaining

concentration, persistence or pace; and whether the claimant has experienced repeated episodes of decompensation of extended duration.[2]  The first three areas are assessed on the following five-point scale:  none, mild, moderate, marked, and extreme.  20 C.F.R.  §§404.1520a(c)(4), 416.920a(c)(4).    The fourth area, episodes of decompensation of extended duration, is rated on the following four-point scale: none, one or two, three, four or more.  Id.  The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful work.  Id.  The Paragraph B criteria are met where an impairment results in two of the following:

---

[2]       "Activities of daily living include adaptive activities such as cleaning, shopping, cooking taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. Part 404, Subpart P, Appendix 1 §12.00C1.

"Social Functioning refers to [a claimant's] capacity to interact independently, appropriately, effectively, and on a sustained basis with others," and includes such activities as "the ability to get along with others, such as family members, friends, neighbors, grocery store clerks, landlords, or bus drivers." 20 C.F.R. Part 404, Subpart P, Appendix 1 §12.00C2.

"Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Part 404, Subpart P, Appendix 1 §12.00C3.

"Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. Part 404, Subpart P, Appendix 1 §12.00C4.  "The term repeated episodes of decompensation, each of extended duration in these listings means three episodes in one year, or an average of once every four months, each lasting for at least 2 weeks." Id.

a marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpart P, Appendix 1 §§12.02, 12.03, 12.04, 12.06, 12.08.

### C. LEGAL BENCHMARKS FOR THE ALJ'S ASSESSMENT OF A CLAIMANT'S CREDIBILITY

Further, an ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference, since an ALJ is charged with the duty of observing a witness' demeanor and credibility. Frazier v. Apfel, No. 99–CV–715, 2000 WL 288246, at *9 (E.D.Pa. Mar. 7, 2000) (**quoting** Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531(6th Cir.1997)). In making a finding about the credibility of a claimant's statements, the ALJ need not totally accept or totally reject the individual's statements. SSR 96–7p. The ALJ may find all, some, or none of the claimant's allegations to be credible, or may find a claimant's statements about the extent of his or her functional limitations to be credible but not to the degree alleged. Id.

In the same fashion that medical opinion evidence is evaluated, the Social Security Rulings and Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529; SSR 96–7p. First,

symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 404.1529(b); SSR 96–7p. During the second step of his or her credibility assessment, the adjudicator must determine whether the claimant's statements about the intensity, persistence or functionally limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c); SSR 96–7p. This includes, but is not limited to: medical signs and laboratory findings, diagnosis and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work. Id. The Social Security Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 96–7p. Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. § § 404.1529(c)(3). These factors include: activities of daily living; the location,

duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id. See George v. Colvin, No. 4:13-CV-2803, 2014 WL 5449706, at *4 (M.D. Pa. Oct. 24, 2014).

### D.  OTHER PROCEDURAL AND SUBSTANTIVE REQUISITES FOR AN ALJ RULING–PROPER HYPOTHETICAL QUESTIONS FOR VOCATIONAL EXPERTS

Finally, since one of the principal contested issues in this setting often relates to the claimant's residual capacity for work in the national economy, an ALJ must exercise care when formulating proper hypothetical questions to vocational experts who opine on the availability of work for a particular claimant and assessing that VE testimony.  In this regard, the controlling legal standards are clear, and clearly defined.  As the United States Court of Appeals for the Third Circuit has observed:

> Discussing hypothetical questions posed to vocational experts, we have said that "[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." Podedworny, 745 F.2d at 218.  A hypothetical question posed to a vocational expert

"must reflect *all* of a claimant's impairments." Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir.1987) (emphasis added). Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence. Podedworny, 745 F.2d at 218 (citing Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1155 (3d Cir.1983)).

Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002).

The formulation of a proper hypothetical question has a dual significance in social security proceedings. First, as an evidentiary matter, it determines whether the vocational expert's opinion can be considered as substantial evidence supporting an ALJ finding. Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002)("Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence.") In addition, an erroneous or inadequate hypothetical question undermines the reliability of any residual function capacity determination since " objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself." Rutherford v. Barnhart, 399 F.3d 546, 554 n. 8 (3d Cir. 2005). However, it is also well-settled that a hypothetical does not need to address every conceivable limitation suggested by a claimant. Rather the "ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations* (see Plummer, 186 F.3d at

431).” Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005)(emphasis in original).

### E. SUBSTANTIAL EVIDENCE SUPPORTED THE ALJ'S DECISION

#### 1. THE ALJ'S DETERMINATION AT STEP THREE OF THE SEQUENTIAL EVALUATION PROCESS IS SUPPORTED BY SUBSTANTIAL EVIDENCE

At the outset, Cano-Martinez contends that the ALJ erred by concluding at Step 3 of this sequential analysis that she did not meet the Paragraph B criteria of Listings 12.02 (Organic Mental Disorders), 12.03 (Schizophrenic, Paranoid and Other Psychotic Disorders), 12.04 (Affective Disorders), 12.06 (Anxiety Related Disorders), and 12.08 (Personality Disorders). (Doc. 10 p. 6.) As noted above, the ALJ concluded that Plaintiff did not meet Listings 12.04 and 12.06 because she did not meet the Paragraph B criteria shared by these, and all of the above-listed mental impairment listings. (Admin Tr. 25-26).

In his decision, the ALJ found that Plaintiff had a mild restriction of activities of daily living, moderate difficulties in social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation which have been of extended duration. (Admin Tr. 25-26). In his decision, the ALJ reasoned that Plaintiff had only mild restriction of activities of daily living because:

The claimant testified she could get dressed and due[sic] her hair with no problems, she could clean dishes and vacuum but must take breaks. She stated that she does not cook. Her mother does all the cooking. The claimant in her function report from January of 2011 indicated that she has no problems dressing. Contrary to her testimony she reported that she could prepare meals and do laundry. The claimant's "best friend", Ms. Dana Weiss (hereinafter Ms. Weiss) in the 3rd party function report from January of 2011 essentially mimicked what the claimant alleged in her function report. She also added the claimant prepares meals daily, moistly[sic] frozen dinners. Dr. Thomas Fink Ph.D. in the Psychiatric Review Technique (hereinafter PRT) from February of 2011 reported the claimant has only "mild" difficulty in this functioning area. The totality of the evidence demonstrates that the claimant has no more than "mild" restriction in activities of daily living.

(Admin Tr. 25)(internal citations omitted).

The ALJ further reasoned that Plaintiff had only moderate difficulties in social functioning because:

the claimant testified that she went to one of her daughter's soccer games last year. She stated she has three close friends that she will go over to their houses and watch movies. The claimant stated she gets annoyed and she has anger problems. She stated she has hit and shoved people in the past. The claimant in her function report noted she does out "only to take her daughter to school and pick her up" and can go out alone. She reported she goes shopping in stores for food and personal items. She also noted she has problems getting along with family, friends and neighbors, but does spend time with others. She talks on the phone daily and attends college. Ms Weiss in the 3rd party function again echoed what the claimant reported. She further noted the claimant spends time visiting, watching TV and shopping with others. Dr. Fink in the PRT found that the claimant is only "mildly" limited in her social functioning. Accordingly, the totality of the evidence demonstrates that the claimant has no more than "moderate" limitations in social functioning.

(Admin Tr. 25-26)(internal citations omitted).

In addition, the ALJ reasoned that Plaintiff had experienced no episodes of decompensation of extended duration because:

> The claimant testified that she was admitted to New Perspectives on three occasions for depression, anxiety and cutting herself. The first admission was in November of 2011, the second admission was in March of 2012 and again in May 2012. One visit was for suicidal thoughts and the other two admissions; she was cutting herself but was not suicidal. The claimant was admitted to the Pocono Medical Center on August 27, 2011. Dr. Ann McDonald diagnosed her with schizoaffective disorder and borderline personality disorder. She has some superficial cuts on her left hand. She was discharged three days later. A progress note with D. Ilan Levinson from October 24, 2011 noted the claimant was admitted to New Perspectives on October 10, 2011. She made superficial cuts on her forearm. The claimant was again admitted to New Perspectives on March 20, 2012. The claimant had thoughts of harming her best friend's mother. She was diagnosed with major depressive disorder and her GAF was set at a 42 on admission. It was noted she had stopped taking her psychiatric medications at the time of this admission. She was discharged three days later on March 23, 2012. Dr. Levinson further noted the claimant was admitted to New Perspectives from May 10, 2012 to May 20, 2012 for "cutting ideations" but no suicidal thoughts. Dr. Fink in the PRT determined the claimant has had no episodes of decompensation. Although the claimant had four brief psychiatric admissions, she recovered quickly and the claimant's admissions have not met the durations requirements of an episode of decompensation. The totality of the evidence demonstrates that claimant has had "no" episodes of decompensation which have been of extended duration ...

(Admin Tr. 26)(internal citations omitted).

At step three of the evaluation process, the ALJ must determine whether a claimant's alleged impairment is equivalent to a number of listed impairments that are acknowledged as so severe as to preclude substantial gainful activity. 20 C.F.R. §416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, App. 1; Burnett, 220 F.3d 112, 119. In making this determination, the ALJ is guided by several basic principles set forth by the social security regulations, and caselaw. First, if a claimant's impairment meets or equals one of the listed impairments, the claimant is considered disabled per se, and is awarded benefits. 20 C.F.R. §416.920(d); Burnett, 220 F.3d at 119. However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, Plaintiff bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990); 20 C.F.R. §416.920(d). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. Id.

In this case, the ALJ was presented with a mixed and equivocal picture regarding the Plaintiff's emotional state and functioning during this closed period of claimed disability. That murky picture included significant evidence contradicting Cano-Martinez's claim that she met all of the criteria for a finding of disability at Step 3 due to her emotional impairments. Thus, while the Plaintiff presented medical

evidence which suggested that she suffered from severe but episodic impairment, medical records also indicated that she responded well to medication; consistently presented well to care givers; was able to work during this period of disability; and indulged in occasional deceitful and manipulative drug seeking behavior. Furthermore, the only expert opinions on the record in this case refuted any claim by Cano-Martinez that she met all of the criteria to satisfy these mental health listings at Step 3 of this analytical process. The ALJ's opinion aptly addressed and summarized this mixed, equivocal and contradictory evidence. Given the deferential standard of review which we apply to assessing such matters, we conclude that the ALJ's decision in this regard is supported by substantial evidence and, therefore, may not be disturbed on appeal.

## 2.    THE ALJ'S FAILURE TO CITE SSR 12-2P IS HARMLESS IN THIS CASE

Cano-Martinez also alleges that the ALJ erred by not specifically referring to a Social Security Ruling, SSR 12-2p, when discussing the effects of the Plaintiff's fibromyalgia upon her claim of disability. The stated purpose of SSR 12-2p is to provide guidance on how the Commissioner "develop[s] evidence to establish that a person has a medically determinable impairment of fibromyalgia" and "evaluate[s] fibromyalgia in disability claims ..." 2012 WL 3104869 at *1. SSR 12-2 p advises

ALJs to consider the following factors when assessing fibromyalgia claims: "1. A history of widespread pain . . . ; 2. Repeated manifestations of six or more . . . symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and 3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded . . . ." Foster v. Colvin, No. 3:14CV00066, 2015 WL 66553, at *8 (S.D. Ohio Jan. 5, 2015)(quoting SSR 12-2 p.). There is no dispute that SSR 12-2p became effective approximately two months before the ALJ issued his decision in this case. Thus, this ruling clearly applied to Plaintiff's claims. However, the ALJ failed to cite SSR 12-2p in his decision.

In this case, Cano-Martinez asserts that the ALJ's failure to consider her case under SSR 12-2p is a basis for remand. (Doc. 10 p. 10.) In response to these allegations, the Commissioner concedes that the ALJ did not specifically refer to SSR 12-2 p, but argues that the ALJ's failure to cite this ruling does not warrant remand in this case because the ALJ's analysis substantially complies with SSR 12-2p. We agree that the ALJ's opinion, taken as a whole, addressed the factors outlined in SSR

12-2 p, and that the evidence cited by the ALJ provided a substantial basis under SSR

12-2 p for denying this claim.[3]

Thus, we are called upon to decide on these facts whether this ALJ's failure to

cite SSR 12-2p in this case is an error requiring remand. We find that this failure

does not compel a remand. In this regard we note that it has long been held that:

"While it is true that the ALJ's written opinion does not cite to [a] Social Security

Ruling . . . , we are not aware of any duty which requires ALJs to specifically mention

relevant Social Security Rulings when rendering a decision on an individual's claim

for Social Security benefits." Holiday v. Barnhart, 76 F. App'x 479, 482 (3d Cir.

2003). Instead, what is required is a thorough assessment of a claimant's condition

_____

[3]That evidence permitted a finding that the Plaintiff experienced only moderate physical limitations due to the alleged onset of fibromyalgia. Therefore, the ALJ could, and did find that she did not display the degree of pain associated with disabling fibromyalgia. Further, the evidence allowed an inference that Cano-Martinez engaged in strenuous physical activity, including moving refrigerators, during this period of claimed disability. This level of self-reported activity also permitted a finding that Cano-Martinez was not fully disabled due to fibromyalgia. Finally, the evidence also affirmatively disclosed other medical grounds for any other manifestations experienced by the plaintiff, other diagnoses which would further undermine a claim of disabling fibromyalgia. Therefore, the ALJ was justified in concluding that Cano-Martinez had not shown that evidence that other disorders that could cause repeated manifestations of symptoms, signs, or co-occurring conditions were excluded. As required by SSR 12-2 p. Thus, application of the SSR 12-2 p criteria to the facts found by the ALJ would have permitted a finding that Cano-Martinez was not disabled.

in a manner consistent with these rulings.  We find that such an assessment was made here.

Further, the Plaintiff's argument in this regard is problematic for several reasons.  First, Cano-Martinez fails to identify *how* the ALJ's analysis of her fibromyalgia strayed from the procedure outlined in SSR 12-2p.  Instead, Plaintiff simply asserts that "[t]he ALJ failed to consider Claimant's case under SSR 12-2p, therefore, a remand to the ALJ for rehearing and a reevaluation of the evidence must be ordered, with specific attention given to the areas that the ALJ overlooked." (Doc. 10 p. 10.)  Although Plaintiff is correct that the ALJ did not specifically cite SSR 12-2p in his written decision, no rule or regulation requires the ALJ to specifically mention relevant Social Security Rulings when rendering a decision.  Furthermore, SSR 12-2p makes clear that the fibromyalgia is evaluated under the same well-established sequential evaluation process as all other impairments.  The ruling merely acts as a guide for the analysis of these challenging claims under the existing regulations, a guide which we find was followed in substance in the ALJ's assessment of this case.  Therefore, this failure of citation to SSR 12-2 p, standing alone, would not compel a remand of this case.

### 3. THE ALJ DID NOT ERR IN CREDIBILITY ASSESSMENTS OR FORMULATION OF A VE HYPOTHETICAL QUESTION

Finally, we conclude that the ALJ did not err in assessing Cano-Martinez's credibility and correctly framed a VE hypothetical question around the limitations that were established by the credible evidence which was then before the ALJ. "Although the ALJ must give Plaintiff's subjective complaints of pain serious consideration, Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir.2002), the ALJ may reject a claimant's complaints if he does not find them credible. Schaudeck v. Commissioner of Social Sec. Admin., , 181 F.3d 429, 433 (3d Cir.1999)." Powell v. Barnhart, 437 F. Supp. 2d 340, 342 (E.D. Pa. 2006). In this regard, "[t]he ALJ 'has the right, as the fact finder, to reject partially, or even entirely, such subjective complaints if they are not fully credible.' Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir.1974)." Timmons v. Colvin, 6 F. Supp. 3d 522, 533-34 (D. Del. 2013). Indeed, an ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference, since an ALJ is charged with the duty of observing a witness' demeanor and credibility. Frazier v. Apfel, No. 99–CV–715, 2000 WL 288246, at *9 (E.D.Pa. Mar. 7, 2000) (quoting Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531(6th Cir.1997)).

Here, there was significant evidence which undermined the credibility of Cano-Martinez. That evidence included physician reports which suggested that Cano-Martinez had actually worked during this fixed period when she claimed that she was disabled, since medical records reported Plaintiff was admitted to a psychiatric care facility on October 10, 2011, two years after the claimed onset of her disability, because she had a relapse of her severe panic attacks and quit her job. (Admin Tr. 771). Further, the medical records relating to this closed period of disability cast doubt upon Cano-Martinez's credibility since Plaintiff's own treating psychiatrist noted during this time that the Plaintiff appeared to be "faking" injuries to obtain pills from the emergency department. (Admin Tr. 254). In addition, some of the self-reported activities of Cano-Martinez, which included moving refrigerators, were entirely inconsistent with a claim of total disability. Given this significant evidence casting doubt upon the plaintiff's overall credibility, the ALJ simply did not err in affording Cano-Martinez's testimony limited credibility.

Furthermore, while the plaintiff complains that the ALJ did not take into account all of her claimed limitations when framing questions for the VE, "ALJ must [only] accurately convey to the vocational expert all of a claimant's *credibly established limitations* (see Plummer, 186 F.3d at 431)." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005)(emphasis in original). Here, we believe that the ALJ

fulfilled this responsibility by making appropriate credibility determinations and the questioning of the VE aptly encompassed all of Cano-Martinez's credibly proven limitations during the closed period of this disability claim.

In short, these rulings by the ALJ pertaining to this closed period claim did not constitute an abuse of discretion, as the plaintiff suggests. Rather, they reflected the informed exercise of judgment and discretion in the fact-finding process on a factual record which was mixed, contradictory and equivocal. Recognizing that substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)," Johnson, 529 F.3d at 200; and consists of less than a preponderance of the evidence but more than a mere scintilla of proof, Richardson v. Perales, 402 U.S. 389, 401 (1971); we conclude that there was substantial evidence which supported the ALJ findings in this case. Therefore, those findings should not be disturbed on appeal.

IV. **CONCLUSION**

Accordingly, for the foregoing reasons, IT IS ORDERED that the Commissioner's decision is upheld, and the Clerk is directed enter judgment for the defendant and close this case. An appropriate order will follow.

So ordered this 30th day of September 2015.

37

**_S/Martin C. Carlson_**
Martin C. Carlson
United States Magistrate Judge